Betsy Jefferis, Esq.
Nevada State Bar No. 12980
**PHILLIPS SPALLAS & ANGSTADT LLC**
504 S. Ninth Street
Las Vegas, Nevada 89101
Telephone: 702-938-1510
Facsimile: 702-938-1511
bjefferis@psalaw.net

John A. Marshall, Esq.
California State Bar No. 109557
Mark S. Reusch, Esq.
California State Bar No. 210679
**MARSHALL & ASSOCIATES**
26565 W. Agoura Road, Suite 200
Calabasas, California 91302
Telephone: 818-617-9337
Facsimile:  818-688-0673
john@marshallbusinesslaw.com
mark@marshallbusinesslaw.com

Attorneys for Plaintiffs, CENTURY-NATIONAL INSURANCE COMPANY, a
California corporation, PACIFIC PIONEER INSURANCE GROUP, INC, a
Delaware corporation, PACIFIC PIONEER INSURANCE COMPANY, a California
corporation, and UCA GENERAL INSURANCE SERVICES,
a California corporation

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| CENTURY-NATIONAL INSURANCE COMPANY, a California corporation, PACIFIC PIONEER INSURANCE GROUP, INC., a Delaware corporation, PACIFIC PIONEER INSURANCE COMPANY, a California corporation, and UCA GENERAL INSURANCE SERVICES, a California corporation, <br><br> Plaintiffs, <br><br> vs. <br><br> DOUGLAS J. GARDNER, ESQ., an individual, DOUGLAS J. GARDNER, LTD., a Nevada domestic professional corporation, RANDS & SOUTH, LTD., a Nevada domestic professional corporation, ALPS PROPERTY & CASUALTY INSURANCE COMPANY, a Montana corporation, DOES 1 through 20, inclusive Defendants. | Case No.: 2:18-CV-02090-APG-PAL <br><br> **STIPULATION AND ORDER FOR FILING OF FIRST AMENDED COMPLAINT** |

1

IT IS HEREBY STIPULATED by and between the parties hereto through their respective attorneys of record that Plaintiffs may file a First Amended Complaint, attached hereto as Exhibit "1".

IT IS FURTHER STIPULATED that the defendant ALPS PROPERTY & CASUALTY INSURANCE COMPANY, waives notice and service of the First Amended Complaint and shall not be required to answer the amendment, and that all denials, responses and affirmative defenses contained in the answer previously filed by defendant ALPS Corporation to the original Complaint shall be responsive to the First Amended Complaint.

IT IS FURTHER STIPULATED that the answer of Defendants Douglas J. Gardner, Esq., Douglas J. Gardner, Ltd., and Rands & South, Ltd. will be filed no later than 10 days after the Order permitting the filing of the First Amended Complaint is signed by the Court.

DATED: December 12, 2018

PHILLIPS SPALLAS & ANGSTADT LLC

MARSHALL & ASSOCIATES

/s/ John A. Marshall
JOHN A. MARSHALL, ESQ.
California Bar No. 109557
26565 W. Agoura Road, Suite 200
Calabasas, CA  91302
Attorney for Plaintiffs

DATED: December 12, 2018

LIPSON NIELSON P.C.

/s/ David A. Clark
JOSEPH P. GARIN, ESQ.
Nevada Bar No. 6653
DAVID A. CLARK
Nevada Bar No. 4443
9990 Covington Cross Drive, Suite 120
Las Vegas, NV  89144
Attorneys for Defendants

2

DATED: December 12, 2018

OLSON, CANNON, GORMLEY
ANGULO & STOBERSKI

/s/ Thomas D. Dillard, Jr.
JAMES R. OLSON, ESQ.
Nevada Bar No. 000116
THOMAS D. DILLARD, ESQ.
Nevada Bar No. 006270
9950 West Cheyenne Avenue
Las Vegas, Nevada 89129
Attorney for Defendant ALPS

## ORDER

**IT IS SO ORDERED**.  Plaintiffs shall forthwith separately filed the first amended complaint which is attached as an exhibit to this stipulation.

Dated: December 21, 2018

_____
UNITED STATES MAGISTRATE JUDGE

STIPULATION AND ORDER FOR FILING OF FIRST AMENDED COMPLAINT

# EXHIBIT 1

1   Betsy Jefferis, Esq.
Nevada State Bar No. 12980
2   **PHILLIPS SPALLAS & ANGSTADT LLC**
504 S. Ninth Street
3   Las Vegas, Nevada 89101
Telephone: 702-938-1510
4   Facsimile: 702-938-1511
bjefferis@psalaw.net
5

6   John A. Marshall, Esq.
California State Bar No. 109557
7   Mark S. Reusch, Esq.
California State Bar No. 210679
8   **MARSHALL & ASSOCIATES**
26565 W. Agoura Road, Suite 200
9   Calabasas, California 91302
Telephone: 818-617-9337
10  Facsimile: 818-688-0673
john@marshallbusinesslaw.com
11  mark@marshallbusinesslaw.com

12  Attorneys for Plaintiffs, CENTURY-NATIONAL INSURANCE COMPANY, a
California corporation, PACIFIC PIONEER INSURANCE GROUP, INC, a
13  Delaware corporation, PACIFIC PIONEER INSURANCE COMPANY, a California
corporation, and UCA GENERAL INSURANCE SERVICES,
14  a California corporation

15              **UNITED STATES DISTRICT COURT**

16                **DISTRICT OF NEVADA**

17  CENTURY-NATIONAL INSURANCE   )  Case No.:
COMPANY, a California corporation,   )
18  PACIFIC PIONEER INSURANCE      )  ***ATTORNEYS HAVE COMPLIED***
GROUP, INC., a Delaware corporation,  )  ***WITH LR IA 11-2***
19  PACIFIC PIONEER INSURANCE     )
COMPANY, a California corporation, and )
20  UCA GENERAL INSURANCE       )  **FIRST AMENDED COMPLAINT**
SERVICES, a California corporation,   )  **FOR:**
21                        )
          Plaintiffs,        )    1.  **LEGAL MALPRACTICE**
22                        )    2.  **BREACH OF FIDUCIARY**
       vs.            )        **DUTY**
23                        )    3.  **BREACH OF CONTRACT**
DOUGLAS J. GARDNER, ESQ., an    )    4.  **BREACH OF THE COVENANT**
24  individual, DOUGLAS J. GARDNER,   )       **OF GOOD FAITH AND FAIR**
LTD., a Nevada domestic professional  )       **DEALING**
25  corporation, RANDS & SOUTH, LTD., a )    5.  **FRAUD**
Nevada domestic professional corporation, )
26  ALPS PROPERTY & CASUALTY    )  **DEMAND FOR JURY TRIAL**
INSURANCE COMPANY, a Montana   )
27  corporation, DOES 1 through 20, inclusive )
Defendants.             )
28

1

Plaintiffs, CENTURY-NATIONAL INSURANCE COMPANY, a California corporation, PACIFIC PIONEER INSURANCE GROUP, INC., a Delaware corporation, PACIFIC PIONEER INSURANCE COMPANY, a California corporation, and UCA GENERAL INSURANCE SERVICES, a California corporation, allege as follows:

## Jurisdiction and Venue

1.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332 in that the controversy is between citizens of different states and the matter in controversy exceeds $75,000 exclusive of interest and costs.

2.     Venue is proper in this Court pursuant to 28 U.S.C. §1391(b).

## The Parties

3.     Plaintiff Century National Insurance Company ("CNIC") is a California licensed insurance company, with its principal place of business located at 16650 Sherman Way, Van Nuys, CA 91406.

4.     Plaintiff Pacific Pioneer Insurance Group, Inc. ("PPIG") is a Delaware corporation with its principal place of business located at 6363 Katella Avenue, Cypress, California 90630.

5.     Plaintiff Pacific Pioneer Insurance Company ("PPIC") is a California corporation with its principal place of business located at 6363 Katella Avenue, Cypress, California 90630.  PPIC is a wholly owned subsidiary of PPIG.

6.     Plaintiff UCA General Insurance Services, Inc. ("UCA") is a California corporation with its principal place of business located at 6363 Katella Avenue, Cypress, California 90630.  UCA is a wholly owned subsidiary of PPIG. Century-National, PPIG, PPIC, and UCA are hereinafter collectively referred to as "Plaintiffs".

7.     Plaintiffs are informed and believe and based thereon allege that defendant Douglas J. Gardner, Esq., ("Gardner") is and at all times mentioned in this Complaint was, a resident of Clark County, Nevada, and was an officer in Rands & South, Ltd. and Douglas J. Gardner, Ltd.

8.     Plaintiffs are informed and believe and based thereon allege that defendant

2

1   Douglas J. Gardner, Ltd., a Nevada domestic professional corporation, ("Gardner, Ltd.")
2   is and at all times mentioned in this Complaint was, a law firm with its principal place of
3   business located at 1055 Whitney Ranch Dr., Suite 220, Henderson, Nevada 89014.

4        9.     Plaintiffs are informed and believe and based thereon allege that defendant
5   Rands & South, Ltd. a Nevada domestic professional corporation, ("R&S") is and at all
6   times mentioned in this Complaint was, a law firm with its principal place of business
7   located at 9498 Double R. Blvd., Reno, Nevada 89521.   Plaintiffs are informed and
8   believe and, on that basis, allege that Gardner, Ltd. and R&S have been doing business as
9   Rands South & Gardner.   Gardner, Gardner, Ltd., and R&S are hereinafter collectively
10   referred to as the "Attorney Defendants".

11        10.    Plaintiffs are informed and believe and thereon allege that Gardner was the
12   agent and/or employee of Gardner Ltd., R&S and/or Rands South & Gardner, and that in
13   doing the things herein alleged, was acting within the course and scope of such agency
14   and employment and with the knowledge, permission and consent, and pursuant to the
15   instruction, of each of Gardner, Ltd. and R&S.

16        11.    Plaintiffs are informed and believe and based thereon allege that defendant
17   ALPS Property & Casualty Insurance Company, a Montana corporation, ("ALPS") is and
18   at all times mentioned in this Complaint was, an insurance company with its principal
19   place of business located at 111 N. Higgins Ave., Suite 200, Missoula, Montana 59802.
20   ALPS is the professional liability insurer for Gardner, Gardner Ltd, R&S and/or RSG.

21        12.    Plaintiffs are ignorant of the true names and capacities of defendants Does
22   1 through 20, inclusive, and by reason thereof sues said defendants by their fictitious
23   names.

24        13.    Plaintiffs will ask leave of Court to amend this Complaint to allege the true
25   names and capacities of said Doe defendants when the same have been fully and finally
26   ascertained.

27                      **Facts**
28        14.    CNIC is an insurance company licensed in California with its domicile

3

1   located in California.  CNIC issued an insurance policy to Universal Capital Investments,

2   LLC, dba Nema Business Center, LLC ("NEMA"), policy number 77A5001095-00 for

3   the period December 11, 2013 to December 11, 2014.  The policy provided a limit of $1

4   million in coverage for NEMA.

5       15.    PPIG is a group of insurance related entities that contracts with CNIC to

6   provide insurance services to its policyholders.  UCA is an insurance program writer and

7   provides property and casualty insurance programs to CNIC and writes commercial

8   package business throughout the western states of California, Arizona, Idaho, Nevada,

9   Oregon, Utah and Washington.  PPIC is an insurance company currently licensed in 12

10   states and assumes a quota share of the business produced by UCA.  While CNIC

11   provided the insurance policy for NEMA, PPIC reinsured CNIC for the policy and

12   through the agreement between PPIC and UCA, UCA assumed a share of the reinsurance

13   costs that PPIC incurred for the CNIC policy.

14       16.    On or about June 26, 2014, Antoinette Ferris, a tenant at the property

15   owned by NEMA, claimed she slipped and fell in the second-floor bathroom as a result of

16   water on the floor from a leak from the toilet in the restroom.  Ms. Ferris claimed to have

17   sustained injury from this fall.  Her injuries, however, apparently were not severe enough

18   to stop her from returning to work the next day.

19       17.    Plaintiff's claim was tendered by NEMA to Precision Risk Management

20   ("PRM"), the risk manager and agent for CNIC, (and also a member of PPIG), on or

21   about July 15, 2014.

22       18.    On April 20, 2016, Ms. Ferris filed a complaint against NEMA for

23   negligence (the "Underlying Action") due to injuries she allegedly sustained from her slip

24   and fall in June 2014.

25       19.    On April 29, 2016, NEMA sold the premises where the injury allegedly

26   occurred to a new owner.  Michael Palar, the prior building manager for NEMA,

27   remained on site for three months to assist the new owners.

28       20.    On May 3, 2016, PRM received notice that Ms. Ferris had filed her

4

1    complaint against NEMA.

2        21.    On or about May 7, 2016, PRM, on behalf of Plaintiffs, retained Gardner to

3    represent NEMA in the Underlying Action.  Plaintiffs are informed and believed that

4    Gardner was a member, partner or shareholder in the other attorney defendants.

5        22.    Plaintiffs are informed and believe and, on that basis, allege that at the time

6    of the defense assignment Gardner had contracted an illness that prevented him from

7    performing his duties as a lawyer at the standard of care for lawyers practicing in the

8    community in which Gardner practiced.  Plaintiffs are informed and believe that during

9    the course of the litigation, Gardner, Ltd. and R&S became aware of Gardner's illness

10   and failed to review his cases, failed to advise Plaintiffs of his illness, failed to supervise

11   Gardner's performance of his duties and failed to assist Gardner to meet the applicable

12   standard of care.  During the course of the Underlying Action, Plaintiffs were unaware

13   that Gardner contracted an illness that prevented him from performing his duties as a

14   lawyer at the required standard of care.

15       23.    In the defense assignment from PRM to Gardner, PRM requested that

16   Gardner represent NEMA to defend against Ms. Ferris' claims in the Underlying Action.

17   PRM requested that Gardner immediately appear on behalf of NEMA and make contact

18   with them.  Gardner failed to contact the insured until approximately fourteen months

19   after Gardner was engaged.  Gardner took the following actions all without first

20   contacting the defendant in the Underlying Action:  (1) he prepared the answer to the

21   complaint; (2) he prepared responses to written discovery; (3) he took Ms. Ferris'

22   deposition; (4) he submitted the joint case conference report; (4) and failed to inform the

23   client to insure that the client retained all evidence relevant to Ms. Ferris' allegations.

24       24.    On June 20, 2016, Gardner filed an answer to Ms. Ferris' complaint in the

25   Underlying Action.  Gardner did so without contacting the insured or gathering any facts

26   from the insured.  Gardner failed to contact Mike Palar, even though PRM had informed

27   him that he was the person that Gardner should contact regarding Ms. Ferris' claims.

28   Gardner had also not spoken to Daniel Dominquez, the person that maintained the

FIRST AMENDED COMPLAINT

1    restroom and spoke to Ms. Ferris after her fall.  The answer that Gardner filed stated that

2    the answering defendants were without sufficient knowledge or information to form a

3    belief as to the truth of the allegations and therefore defendants denied the allegations.

4    Gardner then went on to assert boilerplate affirmative defenses.

5    25.    Gardner also never sent NEMA a litigation hold letter requesting that they

6    retain any evidence related to Ms. Ferris' claim, nor did he seek any maintenance records

7    or repair records from the prior or current owners of the building.

8    26.    On November 9, 2016, Gardner took the deposition of Ms. Ferris.  At that

9    time Gardner had not yet obtained Ms. Ferris' medical records or contacted any witnesses

10   and failed to take a competent deposition of Ms. Ferris as a result of his failure to gather

11   the necessary evidence prior to taking the deposition.

12   27.    On November 12, 2016, Gardner, along with Ms. Ferris' counsel, submitted

13   a joint case conference report.  In that report, Gardner agreed that the last date for expert

14   disclosures would be June 14, 2017 and July 14, 2017 for rebuttal disclosures.  The Court

15   adopted the joint report in its Scheduling Order.

16   28.    On June 14, 2017 Gardner failed to designate any expert witnesses and on

17   July 14, 2017 Gardner failed to designate any rebuttal expert witnesses.

18   29.    On June 30, 2017, Gardner provided responses to Ms. Ferris' first set of

19   requests for production of documents.  Gardner provided responses to Ms. Ferris' first set

20   of interrogatories on July 5, 2017.  Gardner had never spoken to Mr. Dominquez prior to

21   serving these responses and had made no attempt to obtain the maintenance records for

22   the Property.  The discovery responses served on Ms. Ferris by Gardner were wholly

23   deficient.

24   30.    On July 10, 2017, Ms. Ferris submitted a statutory offer for the policy

25   limits of the Century-National policy of $1 million.  Gardner failed to provide accurate or

26   candid information to Plaintiffs regarding the status of the above matters, all of which fell

27   below the standard of care and which he had a fiduciary duty to disclose to Plaintiffs so

28   that they could properly evaluate their exposure in the Underlying Action.  Gardner

1   advised Plaintiffs that the value of the Underlying Action was in the mid-six figure range

2   and based on Gardner's advice, the Plaintiffs let the statutory offer expire and Plaintiffs

3   were thereby prevented from mitigating their damages in the Underlying Action.

4          31.    On August 25, 2017, Ms. Ferris filed a Motion to Strike Defendants'

5   Answer or in the Alternative for Rebuttal Presumption Due to Defendants' Spoliation of

6   Evidence Related to the Subject Action for failure to produce maintenance records

7   requested by Ms. Ferris.  This motion was a direct result of Gardner's failure to properly

8   preserve maintenance records from NEMA or attempt to locate those records from any

9   other sources.  On November 27, 2017, the court in the Underlying Action entered an

10   order that a jury instruction be issued on the issue of the spoliation and that the jury be

11   instructed regarding negligent spoliation of evidence, as well as intentional spoliation of

12   evidence.

13          32.    Gardner failed to depose any of the expert witnesses disclosed by Ms.

14   Ferris.  As described above, Gardner failed to retain or offer testimony of any defense

15   experts.  Gardner failed to depose any witnesses, other than Ms. Ferris.  Further, Gardner

16   failed to depose treating doctors identified by Ms. Ferris.  As a result of Gardner's failure

17   to timely submit expert reports or depose Ms. Ferris' experts, or to conduct any other

18   discovery, Ms. Ferris' evidence of liability, extent of injury, and economic impact went

19   unchallenged at trial.

20          33.    In the Underlying Action, Ms. Ferris' counsel utilized a never produced

21   statement that counsel obtained from Daniel Dominguez.  The deadline for Gardner to

22   file a motion to exclude this statement was October 12, 2017.  Gardner failed to timely

23   object or move in limine to have this statement excluded as evidence at trial.

24          34.    Prior to trial, Gardner never communicated with Plaintiffs any accurate

25   valuation of damages and liability so that Plaintiffs could properly evaluate whether to

26   settle this matter with Ms. Ferris.  Gardner failed to disclose to Plaintiffs all of the above

27   issues that had resulted in the Underlying Action due to his failure to take the proper

28   action in the case so that Plaintiffs could accurately evaluate the value of Ms. Ferris'

FIRST AMENDED COMPLAINT

1  case.

2      35.    Gardner further failed to offer the testimony of any witnesses, either

3  percipient or expert, at the trial in the Underlying Action.  Gardner failed to timely

4  inform the insured of the trial date and accordingly had no representative from NEMA

5  present with him at any point during the trial.  On January 17, 2018, after commencement

6  of trial, Gardner informed PRM that he just recently learned that Mr. Palar and Mr.

7  Dominquez were unable to attend the trial.  Plaintiffs are informed and believe that

8  Gardner failed to issue any subpoenas to any witnesses for trial.

9      36.    Gardner also never communicated with NEMA's owner, Michael White, to

10  inform him of the upcoming trial.  Instead, Gardner's assistant, Jennifer Meacham, had

11  contact with Mr. White.  Mr. White informed Ms. Meacham that he would not be

12  available at all during the week of January 16, 2018, when trial was occurring, because he

13  was having surgery.  Nevertheless, Gardner failed to seek a continuance of trial and

14  commenced and concluded trial without a client present.

15      37.    On December 18, 2017, Gardner was informed that if a court reporter was

16  desired, the court reporter needed to be paid $3,000 seven days prior to trial on January 2,

17  2018.  On December 28, 2017, Gardner recommended to PRM that the case be reported,

18  but made no mention of when the payment was due or the amount of the payment.   On

19  January 11, 2018, Gardner first requested that PRM advance the reporter's fee of $3,000.

20  In response, PRM requested that Gardner either advance the fees or send an invoice as

21  soon as possible so that the reporter could be paid.  Gardner never sent the invoice, and

22  never paid the fees for the reporter.  Nevertheless, PRM sent a check via overnight mail

23  which was received by Gardner on January 16, 2018.  By this time, the trial had already

24      38.    been ongoing for three days and it was already two weeks past the January

25  2, 2018 deadline required to have the trial reported.  Gardner's failure to have a reporter

26  recording the trial rendered it impossible for NEMA to appeal the judgment that Ms.

27  Ferris obtained in the Underlying Action.

28

8

39. After the jury ruled in favor of Ms. Ferris and awarded her damages, Gardner wrote to Plaintiffs that "as the jury went into more detail with the deliberation it determined and agreed that it was almost necessary to punish my client because it presented no live witnesses. This fact was very upsetting to the jury. It gave the jury impression that my client did not care about the case. The failure of these men was extremely angering!"

40. The result of the aforementioned conduct of Gardner was that a verdict in the amount of $4,782,219.00 was entered, of which $4,000,000.00 was, according to Gardner, a punitive assessment. The total amount of the judgment with interest was $4,940,629.74.

41. Plaintiffs are informed and believe that had Gardner met even the minimal standard of care in defending this action, Ms. Ferris' judgment would have been substantially less than $1 million.

42. After judgment was entered, defendants in the Underlying Action filed a motion for a new trial. At the hearing on the motion, Gardner attempted to appear on behalf of defendants, but the court prevented him from appearing because he had been suspended for failure to pay his bar dues. The motion for new trial was denied based at least partially on the basis of Gardner's failure to have the trial recorded by a court reporter.

43. A notice of appeal was thereafter filed on June 11, 2018.

44. Thereafter, Plaintiffs engaged in communications with Ms. Ferris' counsel as well as counsel for Gardner's malpractice insurer, ALPS, to seek a negotiated resolution of the matter. Ms. Ferris and Plaintiffs agreed to attend mediation in an attempt to resolve this matter prior to incurring the expenses of prosecuting an appeal of the Underlying Action.

45. Prior to the mediation, Plaintiffs negotiated with ALPS regarding the mediation. On July 31, 2018, ALPS, sent a letter to NEMA's counsel, Cozen O'Connor in which ALPS agreed to fund $1.5 million in settlement with Ms. Ferris. Further, during

9

1   a conversation which occurred between ALPS' counsel and NEMA's counsel on August

2   10, 2018, ALPS reiterated its commitment to fund up to $1.5 million of a total $3 million

3   settlement with Ms. Ferris and stated that its contribution offer would remain open

4   through mediation.  In reliance on the representation by ALPS, Plaintiffs entered into a

5   binding agreement with Ms. Ferris at mediation for settlement in the amount of $3

6   million.

7       46.     ALPS did not attend mediation, however, prior to and during the mediation,

8   and without Plaintiffs' knowledge, ALPS was secretly communicating with Ms. Ferris'

9   counsel, the contents of which are unknown to Plaintiffs, but which greatly undermined

10  Plaintiffs' efforts and ability to negotiate a settlement with Ms. Ferris.

11      47.     After Plaintiffs committed to the settlement at mediation, ALPS refused to

12  honor its agreement to fund the agreed upon contribution of $1.5 million.  Due to ALPS'

13  failure to honor its agreement to fund $1.5 million of the settlement with Ms. Ferris,

14  PPIG was forced to put PPIC up for sale and will likely have to accept below market

15  value for the sale of PPIC to avoid PPIC having inadequate surplus after funding the

16  settlement and being subject to an investigation by the California Department of

17  Insurance.  PPIC, as the reinsurer of the CNIC Policy was required to cover the amount

18  of the settlement over CNIC's $1 million policy limit, and due to the contractual

19  arrangement between UCA and PPIC, UCA was also required to pay a portion of the

20  settlement.  PPIG would not have been forced to take this action, and UCA would not

21  have had to contribute to the settlement with Ms. Ferris, if ALPS had honored its

22  agreement to contribute $1.5 million to the settlement with Ms. Ferris.

23                      **FIRST CAUSE OF ACTION**

24  **(Legal Malpractice by Plaintiffs against the Attorney Defendants, and Does 1-20,**

25                              **inclusive)**

26      48.     Plaintiffs reallege the allegations of Paragraphs 1 through 46 of this

27  Complaint as if fully set forth herein.

28      49.     During all times relevant herein, the Attorney Defendants and Plaintiffs

1   were in an attorney-client relationship.  Further, the Attorney Defendants continued to

2   represent Plaintiffs in the action in which the malpractice occurred until on or about May

3   11, 2018 when Attorney Defendants were substituted out for new counsel.

4         50.    Having undertaken the aforesaid representation, the Attorney Defendants

5   owed the Plaintiffs the duty to use such skill, prudence, knowledge, care and diligence as

6   members of the legal profession are required to possess and exercise, including, but not

7   limited to, complying with the requirements of the applicable code or cannons of the

8   legal profession.

9         51.    The Attorney Defendants failed to exercise reasonable care and skill in

10  performing legal services for Plaintiffs because they, among other things, failed to do the

11  following in the Underlying Action:  (1)  failed to make timely contact with their clients

12  resulting in a spoliation of evidence instruction to the jury; (2) failed to contact witnesses;

13  (3) failed to take proper discovery; (4) failed to timely retain expert witnesses; (5) failed

14  to depose plaintiff's experts; (6) failed to provide an accurate valuation of damages and

15  liability to Plaintiffs regarding settlement; (7) failed to file appropriate pre-trial motions;

16  (8) failed to properly communicate and coordinate with Plaintiffs and witnesses pre-trial;

17  (9) failed to properly procure witnesses for trail; (10) failed to have trial proceedings

18  recorded; and (11) failed to properly interpose objections at trial.

19        52.    The Plaintiffs suffered actual loss and damage as a result of the Attorney

20  Defendants' misconduct, omissions and failure in that the Plaintiffs were forced to settle

21  and pay $3 million, to hire new defense counsel post-judgment, to attempt to have the

22  court reconsider the judgment and to evaluate whether an appeal of the judgment was

23        53.     possible.  Due to the Attorney Defendants' failure to have the trial

24  recorded, appeal of the judgment was certain to fail, and Plaintiffs mitigated their

25  damages by entering into a settlement with Ms. Ferris in the amount of $3 million,

26  instead of the $4.9 million judgment awarded to Ms. Ferris.  Plaintiffs paid the entire

27  amount of this settlement.

28        54.    Had the Attorney Defendants actions met the minimum standard of care

1  and had the Attorney Defendants taken the above identified actions which they failed to

2  take, judgment in favor of Ms. Ferris would have been substantially less than $1 million.

3  As a proximate result of the Attorney Defendants' breach of their duties as Plaintiffs'

4  counsel, Plaintiffs have been damaged in amount to be determined at the time of trial of

5  this matter.

## SECOND CAUSE OF ACTION

### (Breach of Fiduciary Duty by Plaintiffs against the Attorney Defendants and Does 1-10, inclusive)

9      55.     Plaintiffs reallege the allegations of Paragraphs 1 through 52 of this

10  Complaint as if fully set forth herein.

11      56.     In entering into an attorney-client relationship with Plaintiffs, the Attorney

12  Defendants undertook a fiduciary duty to act on behalf of Plaintiffs, free from outside

13  consideration or constraints, and to exercise their abilities constantly and diligently for

14  the protection of the Plaintiffs' interests and not those of any other person.

15      57.     As more fully described herein, the Attorney Defendants breached their

16  fiduciary duties as counsel to Plaintiffs by among other things:  (1)  failing to make

17  timely contact with their clients resulting in a spoliation of evidence instruction to the

18  jury, including, but not limited to, issuing a litigation hold letter to the client; (2) failing

19  to contact witnesses; (3) failing to take proper discovery; (4) failing to timely retain

20  expert witnesses; (5) failing to depose plaintiff's experts; (6) failing to provide an

21  accurate valuation of damages and liability to Plaintiffs regarding settlement; (7) failing

22  to file appropriate pre-trial motions; (8) failing to properly communicate and coordinate

23  with Plaintiffs and witnesses pre-trial; (9) failing to properly procure witnesses for trail;

24  (10) failing to have trial proceedings recorded; and (11) failing to properly interpose

25  objections at trial.

26      58.     The Attorney Defendants further breached their fiduciary duties to

27  Plaintiffs when Gardner, after receiving Ms. Ferris' statutory offer in the approximate

28  amount of the policy limits, failed to inform Plaintiffs of Gardner's failures to take the

FIRST AMENDED COMPLAINT

1   appropriate actions to properly defend the Underlying Action, as set forth in detail above.
2   Due to Gardner's failure to be candid with Plaintiffs' regarding his negligent handling of
3   this matter, Plaintiffs did not accept Ms. Ferris' statutory offer and were thereby
4   prevented from mitigating their damages.

5        59.    The Attorney Defendants further breached their fiduciary duties to
6   Plaintiffs when Gardner failed to disclose that he was seriously ill and that his illness
7   affected his ability to defend Plaintiffs in the Underlying Action to the level required to
8   meet the standard of care.  Plaintiffs are informed and believe and, on that basis, allege
9   that at some point Gardner, Ltd. and R&S became aware of Gardner's illness and should
10  have taken action to at least review Gardner's active cases to insure that Gardner was still
11  able to perform his services to his clients which met the minimum standard of care and
12  they failed to do so.  Further, had they done so, they would have determined that Gardner
13  was unable to provide services that met the standard of care and should have notified his
14  clients, including Plaintiffs, that Gardner could no longer function as their counsel in the
15  Underlying Action.

16       60.    Plaintiffs suffered actual loss and damage as a result of the Attorney
17  Defendants' misconduct and omissions in that plaintiff in the Underlying Action obtained
18  a judgment in the amount of $4.9 million, far in excess of what the verdict would have
19  been for a plaintiff with her injuries.  As a result of the Attorney Defendants' breaches of
20  their fiduciary duties, Plaintiffs were left with no choice but to mediate with plaintiff to
21  reach an agreement for an amount less than the full amount of the judgment.  Plaintiffs
22  were able to negotiate with plaintiff to settle the matter for $3 million, all of which was
23  paid by Plaintiffs.

24       61.    Had the Attorney Defendants actions met the minimum standard of care
25  and taken the above identified actions which they failed to take, judgment in favor of Ms.
26  Ferris would have been substantially less than $1 million.  As a proximate result of the
27  Attorney Defendants' breach of their duties as Plaintiffs' counsel, Plaintiffs have been
28  damaged in amount to be determined at the time of trial of this matter.

FIRST AMENDED COMPLAINT

1

**THIRD CAUSE OF ACTION**

2

**(Breach of Contract by Plaintiffs against the ALPS**

3

**Corporation and Does 1-20, inclusive)**

4    62.    Plaintiffs reallege the allegations of Paragraphs 1 through 59 of this

5    Complaint as if fully set forth herein.

6    63.    In writing on July 31, 2018 and orally on August 10, 2018 ALPS

7    committed to fund $1.5 million of the $3 million settlement that Plaintiffs reached with

8    Ms. Ferris in the Underlying Action and stated that the commitment would remain open

9    through mediation.

10    64.    After the settlement was reached with Ms. Ferris for $3 million, ALPS

11    refused to contribute its $1.5 million portion of the settlement.  Plaintiffs fulfilled all of

12    their obligations under the terms of the agreement with ALPS.  Further, when ALPS

13    refused to pay its half of the settlement amount, Plaintiffs paid the entire $3 million

14    settlement to Ms. Ferris.

15    65.    As a proximate result of ALPS breach of the agreement to fund half of the

16    settlement, Plaintiffs have been damaged in amount to be determined at the time of trial

17    of this matter.

18

**FOURTH CAUSE OF ACTION**

19

**(Breach of Covenant of Good Faith and Fair Dealing by Plaintiffs**

20

**against ALPS Corporation and Does 1-20, inclusive)**

21    66.    Plaintiffs reallege the allegations of Paragraphs 1 through 63 of this

22    Complaint as if fully set forth herein.

23    67.    ALPS has a duty of good faith and fair dealing to Plaintiffs.  This duty of

24    good faith and fair dealing requires that neither party do anything which will injure the

25    rights of the other to receive the benefits they are entitled to receive.

26    68.    ALPS breached its duty of good faith and fair dealing by first agreeing to

27    fund half of any settlement reached with Ms. Ferris, up to $3 million, but then refusing to

28    do so after such an agreement was reached with Ms. Ferris.  Plaintiffs are informed and

14

1 believe that ALPS never had any intention of honoring its agreement to fund its

2 commitment toward settlement.

3   69.   Plaintiffs are informed and believe and, on that basis, allege that ALPS

4 made the commitment to Plaintiffs to induce them to settle with Ms. Ferris for $3 million,

5 thereby capping ALPS exposure due to Gardner's malpractice, which had Plaintiffs not

6 settled, would have left ALPS exposed to the full amount of the judgment that Ms. Ferris

7 obtained.  Once the Plaintiffs' settled for $3 million, ALPS then refused to honor its

8 commitment.  Plaintiffs would not have settled with Ms. Ferris, thereby putting PPIC in

9 jeopardy, if they were aware of ALPS true intentions.

10   70.   As a direct and proximate result of ALPS' breaches as set forth above,

11 Plaintiffs funded the entire settlement with Ms. Ferris, a sum in excess of Plaintiffs'

12 policy limits which was due to the negligence of Gardner in his handling of Ms. Ferris'

13 complaint.  The entire amount that Plaintiffs were required to pay were as the result of

14 Mr. Gardner's negligence and as his malpractice carrier, the entire settlement amount

15 should be borne by ALPS.

16   71.   As a further direct and proximate result of ALPS' wrongful conduct in

17 breach of the covenant of good faith and fair dealing, Plaintiffs were damaged in an

18 amount to be proved at trial, which amount is in excess of $3 million.

19   **FIFTH CAUSE OF ACTION**

20   **(Fraud by Plaintiffs against ALPS Corporation and Does 1-20, inclusive)**

21   72.   Plaintiffs reallege the allegations of Paragraphs 1 through 69 of this

22 Complaint as if fully set forth herein.

23   73.   Plaintiffs entered into an agreement whereby ALPS agreed to fund $1.5

24 million of the $3 million settlement reached with Ms. Ferris in the Underlying Action.

25   74.   After entering into the agreement with Plaintiffs, ALPS concealed from

26 Plaintiffs the fact that it was directly in settlement discussions with Ms. Ferris without

27 Plaintiffs knowledge and Plaintiffs are informed and believe and, on that basis, allege that

28 ALPS was undermining Plaintiffs position in their settlement negotiations with Ms.

1   Ferris.

2      75.     Plaintiffs are further informed and believe and, on that basis, allege that

3   ALPS, while making the agreement with Plaintiffs to contribute $1.5 million towards

4   settlement with Ms. Ferris, never had any intention of performing its promise to do so

5   and made the false promise to Plaintiffs to induce them to settle with Ms. Ferris.

6      76.     Plaintiffs are informed and believe and, on that basis, allege that ALPS

7   made the commitment to Plaintiffs to induce them to settle with Ms. Ferris for $3 million,

8   thereby capping ALPS exposure due to Gardner's malpractice, which had Plaintiffs not

9   settled, would have left ALPS exposed to the full amount of the judgment that Ms. Ferris

10   obtained.  Once the Plaintiffs' settled for $3 million, ALPS then refused to honor its

11   commitment.  Plaintiffs would not have settled with Ms. Ferris if they were aware of

12   ALPS true intentions.

13      77.     At the time of the misrepresentations, omissions and concealment

14   referenced herein, ALPS was aware that such misrepresentations, omissions, and

15   concealment was occurring, and allowed them to occur because ALPS benefited from the

16   misrepresentations, omissions, and concealment set forth herein.

17      78.     By reason of said misrepresentations and fraudulent concealment as alleged

18   herein, Plaintiffs have been damaged in an amount of at least $3,000,000.00.

19      79.     In doing the acts herein alleged, ALPS' conduct was willful and intentional,

20   and done in reckless disregard of the possible results.  ALPS' conduct evidenced a

21   conscious disregard of Plaintiffs' rights.  By reason thereof, Plaintiffs are entitled to

22   exemplary and punitive damages against ALPS.

23                              **Prayer for Relief**

24      Wherefore, Plaintiff prays for the following relief:

25      On the First Cause of Action:

26      1.     For compensatory and general damages in excess of $3,000,000.00;

27      2.     For special damages, according to proof;

28      3.     For any other and further relief that the Court considers proper.

On the Second Cause of Action:

4.     For compensatory and general damages in excess of $3,000,000.00;

5.     For special damages, according to proof;

6.     For any other and further relief that the Court considers proper.

On the Third Cause of Action:

7.     For compensatory and general damages in excess of $3,000,000.00;

8.     For special damages, according to proof;

9.     For any other and further relief that the Court considers proper.

On the Fourth Cause of Action:

10.    For compensatory and general damages in excess of $3,000,000.00;

11.    For special damages, according to proof;

12.    For any other and further relief that the Court considers proper.

On the Fourth Cause of Action:

13.    For compensatory and general damages in excess of $3,000,000.00;

14.    For special damages, according to proof;

15.    For any other and further relief that the Court considers proper.

On the Fifth Cause of Action:

16.    For compensatory and general damages in excess of $3,000,000.00;

17.    For special damages, according to proof;

18.    For punitive damages, according to proof;

On all causes of action:

19.    For interest and costs as allowed by law;

20.    Such additional and further relief as this Court may deem just and proper.

DATED: December 12, 2018                    MARSHALL & ASSOCIATES

                                            /s/ John A. Marshall
                                            JOHN A. MARSHALL, ESQ.
                                            Attorney for Plaintiffs Century-National
                                            Insurance Company, Pacific Pioneer Insurance
                                            Group, Inc., Pacific Pioneer Insurance
                                            Company and UCA General Services, Inc.

17

1
2

## **DEMAND FOR JURY TRIAL**

3          Plaintiffs demand a jury trial for all claims triable by jury.

4

5   DATED: December 12, 2018          MARSHALL & ASSOCIATES

6
                                      /s/ John A. Marshall
7                                     JOHN A. MARSHALL, ESQ.
                                      Attorney for Plaintiffs Century-National
8                                     Insurance Company, Pacific Pioneer Insurance
                                      Group, Inc., Pacific Pioneer Insurance
9                                     Company and UCA General Services, Inc.
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

18

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 12th day of December, 2018, I served the above **STIPULATION AND ORDER TO EXTEND TIME TO FILE RESPONSE TO PLAINTIFF'S COMPLAINT** through CM/ECF system of the United States District Court for the District of Nevada (or, if necessary, by U.S. Mail, first class, postage pre-paid), upon the following:

James R. Olson, Esq.
Thomas D. Dillard, Jr., Esq.
Olson, Cannon Gormley, Angulo & Stoberski
9950 W. Cheynne Avenue
Las Vegas, NV  89219
P: 702-384-4012
F: 702-383-0701
jolson@ocgas.com
tdillard@ocgas.com
Attorneys for Defendant ALPS Corporation

Betsy Jefferis, Esq.
Phillis Spallas & Angstadt LLC
504 S. Ninth Street
Las Vegas, NV  89101
P:  702-938-1510
F: 702-938-1511
bjefferis@psalaw.net
Attorneys for Plaintiffs

Joseph Garin, Esq.
David A. Clark Esq.
Lipson, Nielson P.C.
9900 Covington Cross Drive, Suite 120
Las Vegas, NV  89144
jgarin@lipsonneilson.com
dclark@lipsonneilson.com
Attorneys for Defendants Douglas J. Gardner, Esq.
Douglas J. Gardner, Ltd., and Rands & South Ltd.

/s/ Kim K. Ranck
An Employee of Marshall

STIPULATION AND ORDER FOR FILING OF FIRST AMENDED COMPLAINT